E-FILED
Friday, 23 October, 2026 02:50:58 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| JOHN LOY,<br>Plaintiff,<br><br>v.<br><br>GEORGE DAVIDSON, et al.,<br>Defendants. | Case No. 4:24-cv-4157-JEH |

**Order**

Plaintiff John Loy, proceeding *pro se* and currently civilly committed at the Illinois Department of Human Services Treatment and Detention Facility in Rushville, Illinois ("Rushville"), brought this suit pursuant to 42 U.S.C. § 1983. He alleges that Defendants George Davidson, Gale Pool, Cherryle Hinthorne, and Greg Donathan, deprived him of access to the courts, in violation of his rights under the First Amendment. Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. 58. Plaintiff has filed a Response (Dkt. 60), and Defendants' have filed a Reply (Dkt. 61). For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

**I**

With limited exceptions, Plaintiff has not responded to Defendants' Undisputed Material Facts ("UMFs"). Under Local Rule 7.1(D)(2)(b)(6), "[a] failure to respond to any numbered fact will be deemed an admission of the fact." Accordingly, to the extent that they are supported by the evidence of record, and except as otherwise discussed, Defendants' Undisputed Material Facts will be deemed admitted.

**A**

Plaintiff has been a resident of Rushville since January 2001. UMF #2. He filed his first lawsuit while a resident of Rushville Treatment and Detention Facility in 2019. UMF #3. Plaintiff began to request time for Rushville's "Westlaw computers" and "FOIA computer" beginning in December 2023. UMF #4.[1]

On February 27, 2024, Plaintiff directed an inquiry to Donathan about how to obtain time on Rushville's "law computers." UMF #5. On April 1, April 18, and April 26 of 2024, Plaintiff directed additional requests for a "Westlaw computer" to nonparty Security Therapy Aide ("STA") IV Thurman, which Thurman approved in part. UMF #6. On April 1, Plaintiff requested two-hour slots on the Westlaw computer from April 8 through 12. Thurman granted Plaintiff 90 minutes on each of those days. Dkt. 58-1 at p. 13. On April 18, Thurman granted Plaintiff the five 90-minute slots he requested. Dkt. 58-1 at p. 14. The April 26 request appears to have gone unanswered. Dkt. 58-1 at p. 15.

On May 21, May 23, May 30, June 5, June 18, and July 1 of 2024, Plaintiff requested additional time on "Westlaw computers," which Davidson approved in part. UMF #7. At times, Davidson would grant only portions of Plaintiff's requested computer time, or suggest alternative days and times when those requested by Plaintiff were unavailable; at other times Davidson would grant the full request. Dkt. 58-1 at pp. 16-23.

On June 5, 2024, Plaintiff wrote an "attempt to resolve" to the Illinois Department of Human Services ("IDHS") asking why he was not getting more

[1] Plaintiff disputes Defendants' UMF #4, asserting in his Response that he has been trying to access the computers at Rushville since 2019. But Defendants' fact is based on Plaintiff's own Complaint (#1), in which he stated: "In December of 2023 I started writing requests to use a westlaw computer." It is a "well-settled rule that a party is bound by what it states in its pleadings[,]" even at summary judgment. *Soo Line R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

computer time and requesting as relief "better scheduling by staff." UMF #8. The same day, Plaintiff wrote a "resident grievance" to the IDHS, explaining that he received fewer instances of computer time than he was requesting and that he was not allowed to use computers reserved by others when those residents failed to show up for their scheduled computer times. Plaintiff asked whether the scheduling could be updated to be more efficient and asked that the "problem" be "fixed." UMF # 9.

On June 12, 2024, Plaintiff received a response to his "attempt to resolve," which read: "security staff Mr. Davidson contacted who suggested that resident submit his request slips on Mondays – he schedules the law library and computer lab on Tuesday nights. Mr. Davidson also states resident should date his requests." UMF #10; Dkt. 58-1 at p. 25.

On July 17, 2024, Plaintiff received a response to his resident grievance, which explained in part: "Loy is asked to consider he's not the only resident submitting requests to use the Computer Lab and there may not be 5 time slots available within a given period. If a resident is scheduled for the Computer Lab and happens to be a 'no show', staff are not required to allow a passerby (res. Loy) to use the Lab." The response concluded Plaintiff's grievance had been "resolved." UMF #11, Dkt. 58-1 at p. 28.

On August 4, 2024, Plaintiff requested to use the "westlaw computer" on August 7, 8, and 9, from "9-10:30 or later." Pool's response indicated that Plaintiff was approved for computer use on August 9, 10, and 11, at "10:00 AM and 10:30 AM." Plaintiff received the approval on August 8. UMF #12; Dkt. 58-1 at p. 29.

On August 7, 2024, Plaintiff made a request to use the "westlaw computer" every day from August 12 through August 17, at 9:00 AM through 10:30 AM. In response, Pool stated that she assumed Plaintiff was requesting use of the FOIA computer, and approved him for four 90-minute slots. She added that if her

assumption was incorrect, Plaintiff should "send a request for the law library." UMF #13; Dkt. 58-1 at p. 30. Plaintiff filed this suit on August 21, 2024.

In the time since Plaintiff wrote his first "attempt to resolve" to the IDHS on June 5, 2024, Plaintiff filed three additional lawsuits in the United States District Court for the Central District of Illinois while a resident of Rushville, including the instant matter. UMF #15. When Plaintiff was asked at his deposition what he would do when faced with a filing deadline, Plaintiff explained he knew how to "file for a continuance," and that he had done so before. UMF #16; Dkt. 58-3 at p. 40. When asked whether he had missed any legal deadlines due to lack of access to a Westlaw computer, Plaintiff could not recall ever having missed such a deadline, though he did recall that he "once" was on tight on a deadline, but was able to successfully file for a 30-day extension with the court. UMF #17; Dkt. 58-3 at pp. 48-49.

Plaintiff was also asked at his deposition why he uses Westlaw to search for case law as opposed to legal books available in the Rushville law library. Plaintiff responded that Westlaw allows him to "type in certain keywords and stuff and locate that that way, instead of having to thumb through page after page after page of legal decisions." UMF #18. When asked to describe the "roadblocks" he faced in trying to use "Westlaw computers," Plaintiff answered "they only give us these little windows of time to get on the computer. And as I said, it takes a long time and it is very aggravating to look up, write down a few words, look -- if you look down, write a few words, look up, look down, look up, look down, you know. And you got to do it by hand. You know, roadblocks." UMF #19.

Plaintiff was asked at his deposition why he was suing Donathan. Plaintiff explained that he "wrote [to Donathan] requesting help from somebody else" relating to a case called *Johnson v. Avery*. Donathan refused Plaintiff's request. UMF #21; Dkt. 58-3 at pp. 45, 52.

Plaintiff stated that he was suing Pool and Davidson for denying him time on the computers.

As for Hinthorne, Plaintiff stated that he was suing her because "it was her responsibility to oversee the computer situation to begin with. As security director, she is the top dog in this facility."

**B**

Though not labeled as such, the first portion of Plaintiff's Response might be construed an Additional Material Facts section, as contemplated by Local Rule 7.1(D)(2)(b)(5). Defendants observe in their Reply that these "additional material facts" are replete with argument and speculation, and often lack citations to appropriate (if any) evidence. Defendants urge the Court to disregard this section of Plaintiff's Response completely, but the Court declines this invitation. Where Plaintiff has presented actual facts, either supported by citation to appropriate exhibits or relating to matters clearly within Plaintiff's personal knowledge,[2] those facts are properly before the Court.

Certain residents were assigned to help other residents use the Westlaw and FOIA computers, but were only allowed to turn on the computer, turn on the monitor, and complete the agreement page. Dkt. 60 at p. 3.[3] When STA IV Thurman granted Plaintiff computer time, Plaintiff used 90% of that time trying to learn how to use Westlaw.

---

[2] Plaintiff's Response includes a declaration under penalty of perjury that the contents are true. Dkt. 60 at p. 20. Accordingly, the Response itself "constitutes competent evidence" at summary judgment. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

[3] Citations to Plaintiff's Response and Exhibits will reference the page numbers as generated by CM/ECF, rather than the page numbers occasionally affixed by Plaintiff.

In a Resident Request Form dated February 19, 2023, (Dkt. 60-2 at p. 2), Plaintiff wrote to Donathan that the Supreme Court case of *Johnson v. Avery*, 393 U.S. 483 (1969), established that prison facilities could not prevent inmates from assisting inmates with legal work. In a subsequent Resident Request Form (Dkt. 60-2 at p. 3), Plaintiff asserted that he was entitled to help from a resident of his choosing. In his responses (Dkt. 60-2 at pp. 2-3), Donathan wrote that there was no rule prohibiting "residents [from] helping their peers on the unit," but residents were not permitted to cross into other housing units for this purpose.

Relying on his Exhibit A-2, Plaintiff asserts that "Hinthorne's responsibilities requires [sic] her to indirectly oversee inmate requests and much more." Dkt. 60 at p. 3. Plaintiff's A-2 is a one-page document describing the role of the Security Director. It makes clear that the Security Director is a full-line supervisor and must review work and provide guidance to staff, but the document makes no specific reference to inmate requests. Plaintiff states that Hinthorne has not "done her job" by providing guidance and training to staff when it comes to computer use (Dkt. 60 at pp. 4-5), but he does not cite to evidence that supports that assertion.

Davidson and Pool were "erratic" when assigning computer time. Dkt. 60 at p. 5. Davidson "would at times assign computer time when no staff was on duty," such that Plaintiff could not use the computer at that time. Dkt. 60 at p. 7.

Plaintiff documents in his Response a number of occasions on which he requested two hours of computer time and received only 90 minutes of computer time. Dkt. 60 at pp. 10-11. On another occasion, he requested five days of computer time, was granted four days, but ultimately only had one day on which he could actually use the computer, due to missing staff and other issues. Dkt. 60 at p. 10; Dkt. 60-1 at pp. 21-22.

**II**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009) (citations omitted).

In determining whether there is any material dispute of fact that requires a trial, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences that are only supported by speculation or conjecture. *See Singer*, 593 F.3d at 533.

Ultimately, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 322-323)). Thus, summary judgment is appropriate only where the evidence is such that no reasonable jury could return a verdict in the nonmovant's favor. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

**A**

Plaintiff has alleged that Defendants' obstruction of his use of the legal computers at Rushville amounted to a violation of his First Amendment right of access to the courts. *See* Dkt. 8 at p. 2.

"The First Amendment right to petition the government for redress of grievances includes the right of access to the courts." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). In the prison (or detention facility) setting, officials must provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (cleaned up). "Prisoners must receive 'that quantum of access to prison libraries—not total or unlimited access—which will enable them to research the law and determine what facts may be necessary to state a cause of action.'" *Gentry v. Duckworth*, 65 F.3d 555, 558 (7th Cir. 1995) (quoting *Hossman v. Spradlin*, 812 F.2d 1019, 1021 (7th Cir. 1987)).

Because there is no "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. The inmate—or detainee—"must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*; *see also Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) ("[T]he mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed.").

To demonstrate the requisite prejudice, a plaintiff must link the challenged conduct to his "inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). In other words, there must be a "connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge." *Id*. at 671. A plaintiff bringing an access to courts claim cannot prevail absent proof of a "non-frivolous, underlying claim" and official acts frustrating the litigation of that claim. *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022).

**B**

Plaintiff has not produced evidence from which a reasonable jury could conclude that the actions of Defendants rendered him unable to pursue some nonfrivolous or legitimate claim. While the evidence establishes that Plaintiff was litigating other lawsuits within the relevant period, Plaintiff has placed no evidence before the Court (1) describing any one of those suits with specificity; (2) probative of the legitimacy or nonfrivolousness of any of the underlying claims; or (3) drawing any sort of line between the conduct of Defendants and the failure of any one of those suits.

Indeed, Plaintiff's own deposition testimony tends to affirmatively suggest that there was no such prejudice. Plaintiff could not recall a single instance of ever having missed a deadline in any of his cases due to lack of computer access at Rushville. He could recall only a single instance in which he even had to move for an extension of time, which he did successfully. *See Pratt v. Tarr*, 464 F.3d 730, 731 (7th Cir. 2006) (explaining, in pleading context, that the requisite prejudice in access-to-courts claims ordinarily takes the form of missed court deadlines, failure to make timely filings, or dismissal of legitimate claims because of the denial of reasonable access to legal resources). And the fact that Plaintiff was able to file multiple lawsuits while navigating the ostensible frustration of his access

to the legal computers likewise suggests the lack of cognizable injury required to support his access to courts claim.

Plaintiff's Response—both the factual portion and his argument—is devoted almost entirely to the various "roadblocks" he believes he encountered in attempting to use the Rushville legal computers. His sole argument as to prejudice appears within the "Conclusion" of his Response, and proceeds as follows: "As for being harmed by these people, I need only point to a failed law suit filed in 2019, John Loy v. Greg Scott. Prior to this date I have never been involved in any litigation." Dkt. 60 at p. 18. Plaintiff explains that the 2019 suit arose after he fell from his top bunk, when he should have been moved to a lower bunk five years earlier. He asserts that he "lost [the] case because I had no idea what I was doing. Have lost 2 other suit[s] for the same reason." Dkt. 60 at p. 19.

Plaintiff's argument is unavailing for multiple reasons. First, and most generally, the broad assertion that Plaintiff lost his 2019 case because he did not know what he was doing does not constitute competent evidence that Plaintiff failed to prevail on his claim because of lack of access to Rushville's legal computers. The Court's favor toward the nonmoving party at summary judgment does not extend to drawing inferences that are only supported by speculation or conjecture. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008). "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). This means that the Court "need not accept as true [the non-moving party's] *characterization* of the facts or [their] legal conclusion." *Nuzzi v. Nguyen*, 2009 WL 1409703, at *8 (C.D. Ill. May 20, 2009) (emphasis in original).

More specifically, as Defendants observe in their Reply, Plaintiff alleged in his Complaint that he "started writing requests to use a westlaw computer" in

December 2023. This is a binding judicial admission. To the extent that any conduct prior to that date is relevant to the instant case, Plaintiff has not presented evidence that any of the Defendants in this case played any role in preventing him from obtaining the amount of computer access he desired during the pendency of the 2019 lawsuit.

Those issues notwithstanding, the Court has identified the lawsuit in question, *Loy v. Scott*, C.D. IL. Case No. 19-CV-4226. No Defendant named here was named in that case. In an Order dated February 23, 2023, (*id*. at Dkt. 138) District Judge James Shadid granted summary judgment in favor of the defendants. The Order makes clear that summary judgment was granted on the merits based on the evidence presented; there was no suggestion that it was based on any sort of legal failings on Plaintiff's part.

Plaintiff, still proceeding *pro se*, then pursued an appeal of that order to the Seventh Circuit. *See Loy v. Scott*, No. 23-1278, 2024 WL 1270427, at *1 (7th Cir. Mar. 26, 2024). Plaintiff filed an opening brief (No. 23-1278 Dkt. 14) and a reply brief (*id*. at Dkt. 41), both replete with legal citation and argument. He engaged in regular motions practice. The Court of Appeals issued an Order "tak[ing] a fresh look" at the summary judgment ruling, "giving the benefit of conflicting evidence and reasonable inferences to Loy," but ultimately affirming the district court on the merits. *Loy*, 2024 WL 1270427, at *2-3.

In sum, Plaintiff has not produced evidence suggesting that anyone's conduct with respect to his access to the Rushville legal computers—let alone the Defendants in this case—prejudicially frustrated his ability to pursue his 2019 lawsuit. And where the Court has endeavored to seek out that evidence for itself, it finds district court and appellate court dockets demonstrating that Plaintiff litigated that case, from start to finish, far more ably that most *pro se* litigants would be capable of. There is no evidence, presented by either party or

uncovered by this Court, that would allow a reasonable jury to find that Plaintiff has suffered the sort of cognizable injury necessary to sustain his access-to-courts claim.

**III**

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. 58) is GRANTED. Judgment to enter for Defendants and against Plaintiff.

*It is so ordered.*

Entered: October 23, 2026

s/Jonathan E. Hawley
United States District Judge